# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| EQUAL RIGHTS CENTER<br>11 Dupont Circle, N.W., Suite 400<br>Washington, D.C.  20036 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LEWIS STARKS<br>930 Farragut Street, N.W.<br>Apartment No. 409<br>Washington, D.C.  20011 | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case Number _____ |
| | ) | |
| DOCTOR'S ASSOCIATES INC., d/b/a<br>SUBWAY<br>3000 N.E. 30th Place<br>Suite 207<br>Fort Lauderdale, Florida 33306 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SUBWAY REAL ESTATE CORPORATION<br>325 Bic Drive<br>Milford, Connecticut 06460 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SHARMIN AHMED<br>530 Morse Street, N.E.<br>Washington, D.C. 20002 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NEW COMILLA, INC. | ) | |

530 Morse Street, N.E.                    )
Washington, D.C. 20002                    )
                                          )
        and                               )
                                          )
OBAYEDUL HOQUE                            )
3204 Pennsylvania Avenue, S.E.            )
Washington, D.C. 20020                    )
                                          )
        and                               )
                                          )
SUBWAY SANDWICH & SALAD, INC.             )
3204 Pennsylvania Avenue, S.E.            )
Washington, D.C. 20020                    )
                                          )
        and                               )
                                          )
MOHAMED ALAM                              )
800 North Capitol Street, N.W.            )
Washington, D.C. 20002                    )
                                          )
        and                               )
                                          )
TRIPLE A ASSOCIATES INC.                  )
800 North Capitol Street, N.W.            )
Washington, D.C. 20002                    )
                                          )
        and                               )
                                          )
FASLAT ELMOHTASEB                         )
3275 M Street, N.W.                       )
Washington, D.C. 20007                    )
                                          )
        and                               )
                                          )
JOHAL SYSTEM INC.                         )
3275 M Street, N.W.                       )
Washington, D.C. 20007                    )
                                          )
        and                               )
                                          )
ELMOHTASEB INC.                           )
1129 18th Street, N.W.                    )
Washington, D.C. 20036                    )

```
                                        )
    and                                 )
                                        )
SYED AHMED                              )
2007 14th Street, N.W.                  )
Washington, D.C. 20009                  )
                                        )
              Defendants.               )
                                        )
_____ )
```

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR COMPENSATORY DAMAGES

## INTRODUCTION

1.      This action arises from the Defendants' long-standing, systematic, and continuing discrimination against persons with disabilities.  Defendants are all owners and/or operators of SUBWAY restaurants by virtue of their status as franchisors of SUBWAY restaurants throughout the United States, including Washington, D.C.; as lessors of SUBWAY restaurants throughout the United States, including Washington, D.C.; or as franchisees of SUBWAY restaurants in Washington, D.C.  Defendants have failed to make their restaurants, places of public accommodation, accessible to persons with physical disabilities.

2.      All franchised SUBWAY restaurants are operated pursuant to franchise agreements between the franchisee and the franchisor, Doctor's Associates Inc. ("DAI").  Many of the approximately sixty franchised SUBWAY restaurants in Washington, D.C. contain significant barriers to wheelchair users and other persons with disabilities, including steps blocking access to the restaurants; doors that are too narrow or difficult or impossible to open; bathrooms

that are inaccessible or without required equipment; obstacles to the path of travel that prevent wheelchair users from ordering or dining; and self-service items that are out of reach or otherwise inaccessible.   Plaintiff Lewis Starks has personally encountered several of these barriers in the stores he has visited, and other violations have been identified by the Equal Rights Center's members and assessment teams.

3.     These barriers are in violation of federal and District of Columbia law. They present a significant deterrent to the use of SUBWAY restaurants across Washington, D.C. by persons with disabilities and result in discrimination against persons with disabilities who are unable to access the establishments or the goods and services provided within.

4.     Accordingly, Plaintiffs Lewis Starks and the Equal Rights Center bring this action to restrain Defendants from continuing their broad pattern of discrimination against persons with disabilities in violation of Title III of the Americans with Disabilities Act of 1990, Pub. L. 101-336, §§ 301–310, 104 Stat. 327 (codified at 42 U.S.C. §§ 12181–12189), its implementing regulations, 28 C.F.R., Pt. 36 & App. A to Pt. 36, and the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01–2-1411.06.  Plaintiffs further seek compensatory damages for Defendants' failure to provide and maintain accessible store entrances, serving areas, dining areas, restrooms, and parking areas, as more fully described herein.

## JURISDICTION AND VENUE

5.    Plaintiffs assert claims, inter alia, under the Americans with Disabilities Act of 1990 ("ADA"), Pub. L. 101-336, 104 Stat. 327 (codified at 42 U.S.C. §§ 12101–12213).  Consequently, this Court has jurisdiction over this action pursuant to both 28 U.S.C. § 1331 and § 1343(a)(4).

6.    Plaintiffs assert claims under the District of Columbia Human Rights Act ("HRA"), D.C. Code §§ 2-1401.01–2-1411.06.  Consequently, this Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

7.    All of the acts and omissions of Defendants giving rise to this action occurred in the District of Columbia.  Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## THE PARTIES

8.    Plaintiff Lewis Starks is a resident of the District of Columbia and a member of the Equal Rights Center.  He has physical impairments that substantially limit him in several major life activities, including walking and performing everyday manual tasks.  Mr. Starks uses a wheelchair for mobility. Thus, he is a person with a disability within the meaning of the ADA and the HRA.

9.    Plaintiff Equal Rights Center ("ERC") is a membership organization and a not-for-profit corporation organized under the laws of the District of Columbia, with its principal place of business at 11 Dupont Circle, N.W., Suite 400, Washington, D.C.  20036.  The ERC's staff and Board of Directors are comprised of

individuals, including persons with disabilities, who have a direct interest in protecting the rights of persons with disabilities. The ERC's membership consists, in part, of persons with disabilities who live throughout the greater Washington, D.C. metropolitan area and others who are interested in, inter alia, equal rights, equal access, and equal opportunity for persons with disabilities. One of the principal goals of the Equal Rights Center is the elimination of discrimination against persons with disabilities, which includes the elimination of the discriminatory effects of architectural barriers to access and utilize public accommodations. The ERC pursues this goal through various means, including research, public education, counseling, advocacy, and conciliation. The ERC brings this case as a representative of its members, whose rights to live in and enjoy a community free from discrimination on the basis of physical disability have been infringed by the Defendants. The ERC has suffered the frustration of its purpose and the loss or diversion of resources in counseling its members who complained of discrimination at SUBWAY restaurants, and in investigating Defendants' conduct.

10.     Defendant Doctor's Associates Inc. d/b/a SUBWAY ("DAI"), is a corporation incorporated under the laws of Florida. DAI is headquartered in Milford, Connecticut, and has a principal office in Fort Lauderdale, Florida. DAI is the sole franchisor of SUBWAY restaurants. According to public reports, SUBWAY is the nation's largest restaurant chain, with annual system-wide sales of more than $7 billion. DAI franchises over 25,000 SUBWAY restaurants in 83 countries worldwide, including the 60 or more SUBWAY restaurants in Washington, D.C.

Defendant DAI is subject to the provisions of the Americans with Disabilities Act because it owns, leases (or leases to), or operates restaurants, which are places of public accommodation that affect commerce. In addition, DAI is subject to the provisions of the District of Columbia Human Rights Act because it owns, leases (or leases to), or operates restaurants within the District of Columbia.

11.     Defendant SUBWAY Real Estate Corporation ("SREC") is a Delaware corporation headquartered in Milford, Connecticut. SREC assists franchisees of DAI in negotiating real estate leases for SUBWAY restaurant locations and in the administration of the leases and lease renewals. SREC also leases SUBWAY restaurant premises and enters into subleases with franchisees of DAI for those premises. On information and belief, SREC leases (or leases to), or otherwise participates in the operation of, some or all of the 60 or more SUBWAY restaurants located in Washington, D.C. Defendant SREC is subject to the provisions of the ADA because it owns, leases (or leases to), or operates restaurants, which are places of public accommodation that affect commerce. In addition, SREC is subject to the provisions of the District of Columbia HRA because it owns, leases (or leases to), or operates restaurants within the District of Columbia.

12.     Defendant Sharmin Ahmed, d/b/a New Comilla, Inc. ("New Comilla"), owns and operates or participates in the operation of one or more SUBWAY restaurants in Washington, D.C., including but not limited to the SUBWAY restaurant located at 530 Morse Street, N.E., Washington, D.C. New Comilla is a corporation organized under the laws of the District of Columbia. The 530 Morse

Street SUBWAY is a place of public accommodation within the meaning of the ADA because it is a restaurant that affects commerce.  Sharmin Ahmed and New Comilla are subject to the provisions of the ADA because they own, lease (or lease to), or operate a restaurant, which is a place of public accommodation.  In addition, Ahmed and New Comilla are subject to the provisions of the District of Columbia HRA because they own, lease (or lease to), or operate a restaurant in the District of Columbia.

13.    Defendant Obayedul Hoque, d/b/a SUBWAY Sandwich & Salad, Inc. ("SUBWAY Sandwich"), owns and operates or participates in the operation of one or more SUBWAY restaurants in Washington, D.C., including but not limited to those located at 1213 Brentwood Road, N.E., 709 H Street, N.W., 1100 New York Avenue, N.W., 3306 14th Street, N.W., and 3204 Pennsylvania Avenue, S.E., Washington, D.C.  SUBWAY Sandwich is a corporation organized under the laws of the District of Columbia.  These SUBWAY establishments are places of public accommodation within the meaning of the ADA because they are restaurants that affect commerce. Obayedul Hoque and SUBWAY Sandwich are subject to the provisions of the ADA because they own, lease (or lease to), or operate restaurants, which are places of public accommodation.  In addition, Hoque and SUBWAY Sandwich are subject to the provisions of the District of Columbia HRA because they  own, lease (or lease to), or operate, restaurants in the District of Columbia.

14.    Defendant Mohamed Alam, d/b/a Triple A Associates Inc. ("Triple A"), owns and operates or participates in the operation of one or more SUBWAY

restaurants in Washington, D.C., including but not limited to the SUBWAY restaurant located at 800 North Capitol Street, N.W., Washington, D.C. This establishment is a place of public accommodation within the meaning of the ADA because it is a restaurant the operation of which affects commerce. Mohamed Alam and Triple A are subject to the provisions of the ADA because they own, lease (or lease to), or operate a restaurant, which is a place of public accommodation that affects commerce. In addition, Alam and Triple A are subject to the provisions of the District of Columbia HRA because they own, lease (or lease to), or operate, a restaurant in the District of Columbia.

15.    Defendant Faslat Elmohtaseb, d/b/a Johal System Inc. ("Johal") and Elmohtaseb Inc., owns and operates or participates in the operation of one or more SUBWAY restaurants in Washington, D.C., including but not limited to SUBWAY restaurants located at 3275 M Street, N.W., 2030 M Street, N.W., 1101 Connecticut Avenue, N.W., 1129 18th Street, N.W., 1363 Wisconsin Avenue, N.W., and 1666 K Street, N.W. Johal is a corporation organized under the laws of the Commonwealth of Virginia. Elmohtaseb Inc. is a corporation organized under the laws of the District of Columbia. These SUBWAY establishments are places of public accommodation within the meaning of the ADA because they are restaurants that affect commerce. Faslat Elmohtaseb, Johal, and Elmohtaseb Inc. are subject to the provisions of the ADA because they own, lease (or lease to), or operate restaurants, which are places of public accommodation. In addition, Elmohtaseb, Johal, and Elmohtaseb Inc. are subject to the provisions of the District of Columbia HRA

because they own, lease (or lease to), or operate restaurants in the District of Columbia.

16.    Defendant Syed Ahmed does or did own and operate or participate in the operation of one or more SUBWAY restaurants in Washington, D.C., including but not limited to the SUBWAY restaurant formerly located at 2007 14th Street, N.W., Washington, DC.  During its operation, the 2007 14th Street SUBWAY was a place of public accommodation within the meaning of the ADA because it was a restaurant that affected commerce.  Defendant Ahmed is subject to the provisions of the ADA because he does or did own, lease (or lease to), or operate a restaurant, which is a place of public accommodation.  In addition, Ahmed is subject to the provisions of the District of Columbia HRA because he does or did own, lease (or lease to), or operate a restaurant in the District of Columbia.

## FACTS

### The ADA and HRA Requirements for Access and "Readily Achievable" Modifications, and Ban on Discriminatory Structures and Practices

17.    After years of hearings and investigations that revealed the persistence of discrimination against persons with disabilities, Congress enacted the Americans with Disabilities Act in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," including discrimination resulting from "outright intentional exclusion, the discriminatory effects of architectural . . . barriers, . . . [and the] failure to make modifications to existing facilities and practices . . . ." 42 U.S.C. § 12101(B)(1) & (a)(5).

18.    The public accommodation provisions in Title III of the ADA, which became effective on January 26, 1993, prohibit discrimination against persons with disabilities "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation . . . ." 42 U.S.C. § 12182(a).  "Restaurants," such as SUBWAY establishments, are public accommodations within the meaning of the ADA.  42 U.S.C. § 12181 (7)(B).

19.    Under Title III of the ADA, places of public accommodation that are constructed 30 months or more after July 26, 1990, must be readily accessible to and usable by persons with disabilities; and alterations, in full or in part thereof, to existing facilities must be completed such that the altered portions are readily accessible to and usable by persons with disabilities to the maximum extent feasible.  See 42 U.S.C. § 12183(a)(1) & (2).

20.    In addition, architectural barriers must be removed under Title III of the ADA from existing facilities where such removal is readily achievable.  See 42 U.S.C. § 12182(b)(2)(A)(iv).  "Readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."  See 42 U.S.C. § 12181(9). Examples of measures which are likely to be readily achievable include, inter alia, installing entrance and interior ramps, widening entrances and interior and restroom doors, creating accessible parking spaces, rearranging tables, adjusting the layout of display racks, installing accessible door hardware, repositioning

restroom dispensers, and installing grab bars in toilet stalls. See 28 C.F.R. §
36.304(b) and 28 C.F.R. Part 36, App. B.

21.    Where the removal of a barrier is not readily achievable, Title III of the
ADA requires such goods, services, facilities, and other accommodations to be made
available "through alternative methods if such methods are readily achievable."
See 42 U.S.C. § 12182(b)(2)(A)(v). In addition, public accommodations must at all
times "make reasonable modifications in policies, practices, or procedures, when
such modifications are necessary to afford such goods, services, facilities, privileges,
advantages, or accommodations to individuals with disabilities . . . ." See 42 U.S.C.
§ 12182(b)(2)(A)(ii).

22.    The Department of Justice regulations implementing Title III of the
ADA, codified at 28 C.F.R. Part 36 & Appendix A, reinforce and further define the
prohibition of discrimination against persons with disabilities, with particular
emphasis on "restaurants and cafeterias." See 28 C.F.R. Part 36, App. A, § 5.

23.    Appendix A of 28 C.F.R. Part 36, entitled Standards for Accessible
Design ('Standards"), sets standards for accessibility for places of public
accommodation, such as restaurants, by individuals with disabilities. These
Standards are to be applied during the design, construction, and alteration of such
buildings and facilities. The Standards provide specific requirements for
accessibility regarding entrances, sales counters, dining areas, restrooms, and
parking lots, among other things.

24.    Standards §§ 5.1 – 5.9 provide additional specifications, for restaurants and cafeterias in particular, regarding counters and bars, access aisles, dining areas, food service lines, tableware and condiment areas, raised platforms, and other equipment.  Standards §§ 5.1 – 5.9 provide that these areas and items shall be accessible to and usable by persons with disabilities, including persons who use wheelchairs.

25.    The restaurant industry generally, and SUBWAY specifically, has had notice since the passage of the ADA of the specific accessibility requirements of the ADA and the Justice Department's regulations.  For example, in 1992, the National Restaurant Association published <u>Americans with Disabilities Act:  Answers for Foodservice Operators</u>.  This publication emphasizes that getting patrons with disabilities into the facility should be the first priority under the ADA for restaurants, and includes "providing a ramp over a few steps" as an example of "simple changes" a restaurant can make to provide access.

26.    On information and belief, DAI has had specific notice of the requirements of the ADA and its own obligations thereunder since, if not before, its involvement in a number of suits claiming ADA discrimination due to the inaccessibility of SUBWAY restaurants in California in 2000.  DAI entered into Settlement and Dismissal Stipulations with each of the plaintiffs in those suits in February 2001, which included the payment of damages and costs as well as an agreement by DAI to modify existing facilities in California over a period of 5 years thereafter.  DAI has since failed, however, to take corrective measures to remove

existing barriers or to take preventive measures against the creation of new barriers to accessibility at its franchised SUBWAY restaurants in Washington, D.C.

27.    Access for persons with disabilities to fast food restaurants has also received substantial attention in Washington, D.C. for more than ten years now, giving local restaurateurs further awareness of their ADA obligations.  Since 1995, the Disability Rights Council of Greater Washington (now the Equal Rights Center), along with individual plaintiffs, has been involved in two suits against local restaurant chains, Burger King and Popeyes Chicken & Biscuits, for violations of the ADA and HRA similar to those alleged in this matter.  Each case was settled, and in both instances the parent corporations, Burger King Corporation and AFC Enterprises, Inc., agreed to pay damages, modify its franchised restaurants, and implement a nationwide ADA compliance program.  One or more of these settlement agreements was publicized in local newspapers and other media.

### Defendants' Responsibility for Access Barriers in District of Columbia SUBWAY Restaurants

28.    Through the specific requirements of the SUBWAY franchisee system established by DAI, the Defendants are either owners, lessors or lessees, or operators of one or more SUBWAY restaurants in the District of Columbia.

29.    On information and belief, all SUBWAY franchisees are required to enter into a standard franchise agreement with DAI before opening a new location. This agreement requires each franchisee to pay to DAI royalties based upon gross sales from the franchisee's SUBWAY restaurant(s).  The franchise agreements also

describe the process by which SUBWAY franchisees enter into sublease agreements with DAI or one of its affiliates before opening a new store location. DAI has entered into SUBWAY franchise agreements with respect to all SUBWAY restaurants in Washington, D.C.

30.    On information and belief, the franchise agreements of DAI incorporate by reference the SUBWAY Operations Manual, which prescribes the official and mandatory operating standards, specifications, procedures, and techniques for the construction, design, and operation of franchised SUBWAY restaurants. DAI requires SUBWAY franchisees to operate their restaurants in accordance with the Operations Manual, and to make changes to their establishments necessary to conform to its regulations. The Operations Manual provides DAI's specifications for complying with the ADA regarding, inter alia, floor plans, design and décor of customer areas, restrooms, and the building exterior, as well as remodeling specifications. DAI franchisees of SUBWAY restaurants are required to comply with the specifications regarding ADA compliance provided by DAI's Operations Manual. Through its franchise agreements, DAI retains the right to terminate a franchisee's agreement for failure to operate by and conform to the standards and specifications of the Operations Manual, including compliance with the ADA.

31.    On information and belief, the franchise and development agreements between DAI and its franchisees require that the construction and mandatory periodic renovation of every SUBWAY restaurant and its parking lots conform to

standard plans, specifications, and design criteria developed by DAI. By the terms of the franchise agreement between DAI and its franchisees, DAI must approve in writing all plans and specifications for the construction or renovation of SUBWAY restaurants, including, but not limited to, floor plans, equipment layouts, décor and interior and exterior entrances and elevations. In order to maintain uniform standards of operation in all SUBWAY restaurants, DAI requires its franchisees to conform to DAI-developed food preparation methods, equipment standards, equipment layouts, product standards, operating procedures management programs, and architectural standards.

32.     On information and belief, DAI conducts or purports to conduct site reviews and inspections of its franchised restaurants to ensure compliance with the Operations Manual and applicable laws, including the ADA. Through its detailed control of franchisee operations, DAI has the capacity and authority to eliminate structural barriers and require compliance with the ADA by each and every store in the District of Columbia. DAI is an operator under the ADA of each and every SUBWAY restaurant in the District of Columbia as to operations bearing on compliance with the ADA. DAI, however, has failed to eliminate such barriers or to otherwise provide accessible entrances, serving and dining areas, restrooms, and parking areas, as required by both the ADA and HRA.

33.     On information and belief, Defendant SREC negotiates leases for individual SUBWAY franchises and subleases those properties to the franchise

owner.  In this capacity, SREC owns, leases (or leases to), or operates each franchised SUBWAY restaurant which it leases and/or subleases to a franchisee.

34.    The individual franchise owner defendants identified in paragraphs 12 through 16 each own, operate and/or lease one or more SUBWAY franchise restaurants in conjunction with DAI as the franchisor and/or SREC as lessor or sublessor.

35.    On information and belief, substantial control over the design, construction, and modification of one or more elements posing a structural barrier to persons with disabilities under the ADA in each store is vested in DAI as to all franchises, in SREC as to those franchises which it leases on behalf of and/or subleases to individual franchisee owners, and in each individual franchise owner/operator for its respective franchised restaurant.  In addition, compliance with laws such as the ADA and the HRA is under the control of and vested in DAI as to all restaurants, SREC as to those franchises which it leases (or leases to), and the individual defendants for their respective franchises.

36.    The Defendants are in violation of the ADA and the HRA in numerous respects, as detailed below, in failing to remove readily achievable barriers to access in existing restaurants, in designing and constructing new and altered restaurants that fail to comply with the ADA, and in failing to make reasonable modifications to restaurant policies and practices in conformance with the ADA.

## Specific Acts of Discrimination Suffered by
## Plaintiff Starks at Washington, D.C.  SUBWAY Restaurants

37.    Plaintiff Lewis Starks has attempted, on more than one occasion, to enter and purchase food at several SUBWAY restaurants in the District of Columbia, including without limitation the SUBWAY restaurants located at 530 Morse Street, N.E., at 709 H Street, N.W., and at 2007 14th Street, N.W.  Access barriers both inside and outside of these stores have made it either difficult or impossible for Mr. Starks to purchase a meal, eat at the restaurant and/or use the restroom facilities.  These unlawful barriers and non-compliant establishments have caused Mr. Starks substantial frustration and financial risk and have also caused him to suffer great personal embarrassment and mental anguish as well as the stigma of discrimination.

38.    Mr. Starks has attempted, on multiple occasions, to visit the SUBWAY restaurant at 530 Morse Street, N.E., Washington, D.C., located near his sister's residence.  A step at the entrance of this restaurant makes it impossible for Mr. Starks to enter the store in his wheelchair.  As a result, in order to purchase a meal from this SUBWAY restaurant, Mr. Starks was forced, on several occasions, to ask a stranger to enter the store to buy a meal on his behalf.  When a stranger has been willing to do this, Mr. Starks has then given the unknown person money and his order while he waited outside for the person to return.  This has put Mr. Starks at substantial risk of being robbed and caused him significant embarrassment.

39.     In the winter, Mr. Starks is unable to use even this method of giving money to an unknown person to purchase food from SUBWAY because it is often too cold to sit outside waiting for another customer to help him.

40.     On at least one occasion, Mr. Starks attempted to attract the attention of a SUBWAY employee at 530 Morse Street, N.E. by knocking on the door and windows of the storefront for several minutes.  No employee came outside to take his order or speak with him.  There is no bell or other device on the outside of this store for Mr. Starks to use to obtain service.

41.     Mr. Starks has experienced great inconvenience and embarrassment in unsuccessfully trying to patronize this SUBWAY establishment.  Due to the access barriers that exist at the 530 Morse Street, N.E. restaurant, on more than one occasion Mr. Starks was deterred from patronizing this SUBWAY establishment and was instead forced to find an accessible establishment at which he could buy food.

42.     Mr. Starks has also tried to patronize the SUBWAY restaurant located at 709 H Street, N.W. in Chinatown and Gallery Place, a neighborhood he visits. On one occasion, in June of 2005, Mr. Starks was unable to enter the store because the door opening force was too heavy for Mr. Starks to open and maneuver his wheelchair through the door.  After Mr. Starks struggled unsuccessfully for some time to get through the door, a SUBWAY employee or manager finally helped Mr. Starks by opening the door and holding it for him.

43.    Mr. Starks was able to purchase a meal, but could not independently obtain a drink from the self-serve soda fountain because it was too high for a person in a wheelchair to reach.  The only seating area at the 709 H Street, N.W. SUBWAY restaurant is located up a flight of stairs; no wheelchair accessible seating is provided downstairs.  Having no means of accessing the upstairs seating area, Mr. Starks was only able to eat his meal when the manager allowed him to use the cashier counter downstairs as a table.  This caused Mr. Starks great personal embarrassment, as other customers in line verbally expressed irritation at his presence there.

44.    Mr. Starks also tried numerous times to enter and obtain food at the SUBWAY restaurant that was, until very recently, located at 2007 14th Street, N.W., which is near his home.  He was unable to enter the establishment in his wheelchair because there was a step at the entrance with no ramp.  There were no alternative entrances for him to use.  As a result, Mr. Starks was forced to ask strangers to buy food for him, causing him embarrassment and putting him at financial risk.  Mr. Starks was, in fact, robbed on at least one occasion when, because he was unable to enter the SUBWAY at 2007 14th Street, N.W., he gave a $20 bill to a stranger who then stole the money rather than buying Mr. Starks the meal he had requested to be purchased on his behalf.

45.    On other occasions, Mr. Starks tried to gain the attention of a SUBWAY manager or employee to take his order by either tapping on the store window of the 2007 14th Street, N.W. restaurant or by asking a customer to request

that an employee or manager come outside to speak with him.  Although at least one employee witnessed Mr. Starks' attempts, no one ever came outside to speak with him or take his order.  There was no bell or other device on the outside of this store for Mr. Starks to use to obtain service.

46.    Due to the access barriers that existed at the 2007 14th Street, N.W. restaurant, on more than one occasion Mr. Starks was deterred from patronizing this SUBWAY establishment and was instead forced to find an accessible establishment at which he could buy himself a meal.

47.    Plaintiff Starks lives in Washington, D.C., and regularly travels throughout the city.  He likes the food served at SUBWAY restaurants and would patronize SUBWAY restaurants throughout Washington, D.C. if their design did not render them inaccessible to customers who use wheelchairs.  His inability to patronize these restaurants makes him feel frustrated and is a source of inconvenience and injury to him.  Due to the failure by Defendants to comply with the ADA and the HRA, Mr. Starks has suffered embarrassment, humiliation and the indignity and stigma of discrimination.

### Equal Rights Center's Investigation of
### ADA Violations at Washington, D.C. SUBWAY Restaurants

48.    After receiving complaints regarding access barriers at SUBWAY restaurants, the Equal Rights Center conducted inspections of 58 out of the approximately 60 SUBWAY restaurants in the city to assess whether the SUBWAY restaurant entrances, service and dining areas, and restrooms complied with the

pertinent regulations promulgated by the Attorney General to implement the ADA, known as the Standards for Accessible Design ("Standards"). See 28 C.F.R., Part 36, App. A.  These inspected restaurants are located at 1613 17th St. N.W.; 2030 M St. N.W.; 1444 I St. N.W.; 1331 F St. N.W.; 1213 Brentwood Rd. N.E.; 3504 12th St. N.E.; 530 Morse St. N.E.; 1500 Benning Rd. N.E.; 406 1st St. S.E.; 430 8th St. S.E.; 815 H St. N.E.; 236 Massachusetts Ave. N.E.; 4401 Connecticut Ave. N.W.; 5616 Connecticut Ave. N.W.; 3520 Connecticut Ave. N.W.; 3950 Minnesota Ave. N.E.; 1801 New York Ave. N.W.; 709 H St. N.W.; 800 N. Capitol St. N.W.; 901 E St. N.W.; 1100 New York Ave. N.W.; 1339 14th St. N.W.; 2007 14th St. N.W.; 1115 U St. N.W.; 1300 Pennsylvania Ave. N.W.; 1401 K St. N.W.; 1666 F St. N.W.; 1776 G St. N.W.; 1101 Connecticut Ave. N.W.; 1015 15th St. N.W.; 1004 14th St. N.W.; 1946 New Hampshire Ave. N.W.; 2010 P St. N.W.; 1129 18th St. N.W.; 1800 I St. N.W.; 2033 K St. N.W.; 3275 M St. N.W.; 2216 Wisconsin Ave. N.W.; 4441 Wisconsin Ave. N.W.; 2301 Georgia Ave. N.W.; 3306 14th St. N.W.; 1201 Tuckerman St. N.W.; 1605 Connecticut Ave. N.W.; 2469 18th St. N.W.; 4400 Massachusetts Ave. N.W.; 525 School St. S.W.; 3221 23rd St. S.E.; 1412 Good Hope Rd. S.E.; 1100 New Jersey Ave. S.E.; 14th St. and Constitution Ave. N.W. (Smithsonian); 5300 Wisconsin Ave. N.W.; 5028 Wisconsin Ave. N.W.; 501 D St. N.W.; 3204 Pennsylvania Ave. S.E.; 4518 Benning Rd. S.E.; 1363 Wisconsin Ave. N.W.; 1666 K St. N.W.; and 2861 Alabama Ave. S.E.

49.    The ERC investigation revealed that there are significant barriers to entry for at least sixteen SUBWAY restaurants in Washington, D.C., many of which

have at least one step between the public sidewalk and the restaurant entrance,
and no accessible alternative entrance, thereby rendering each restaurant
inaccessible to wheelchair users. Several of these sixteen SUBWAY restaurants
have barriers to access due to a lack of accessible parking and noncompliant double
entrance doors, which both prevent and deter persons with disabilities from
patronizing these establishments.

50.    At least forty-five SUBWAY restaurants in Washington, D.C. have
significant barriers to accessing or using their restrooms. Those barriers include,
but are not limited to: round doorknobs that pose a major accessibility issue to
persons with disabilities; a lack of adequate clear floor space for wheelchair users to
approach and access controls, inaccessible toilets, dispensers, receptacles, and other
operable restroom equipment; exposed pipes under bathroom sinks that pose a
serious burn hazard to people who use wheelchairs; and hardware that is not usable
to persons with manual impairments.

51.    Many of the surveyed SUBWAY restaurants contain barriers to access
to restaurant goods and services, including, but not limited to, self-service items
such as drink dispensers too high for access by wheelchair users as well as sales
counters too high for access. In addition, many SUBWAY establishments contain
barriers within the store that prevent wheelchair users from accessing services,
including, but not limited to: "queue lines" utilizing rope barriers through which
wheelchair users cannot maneuver; tables and seating areas that wheelchair users

cannot utilize; and narrow paths of travel that prevent access to service counters, restrooms, and other facilities.

52.    Each and every barrier that the ERC investigation identified in these SUBWAY restaurants is a violation of ADA and HRA requirements.  Most or all of them are in violation of specific guidelines published by the Department of Justice governing accessibility to facility entrances, serving and dining areas, and restrooms.

53.    The following specific SUBWAY restaurant locations provide examples of the many violations of the ADA and HRA that the ERC's investigation revealed:

(a)    The 530 Morse Street, N.E.  SUBWAY has a step at the entrance to the restaurant, making it inaccessible to wheelchair users in violation of Standards § 4.3.  No alternative entrance is provided.  This SUBWAY does not have any accessible parking spaces in violation of Standards § 4.1.2 and § 4.6.6.

(b)    The doors at the entrance of the 709 H Street, N.W. SUBWAY are inaccessible to persons with disabilities due to their weight, and pose a barrier to access, the removal of which would be readily achievable, in violation of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iv), and the U.S. Department of Justice regulation to Title III of the ADA, 28 C.F.R. 36.304.  The only seating area at this SUBWAY is inaccessible to wheelchair users, as it can only be reached by climbing a full flight of stairs.  No wheelchair accessible seating  is provided downstairs, in violation of the regulation on alternatives to barrier removal. See 28 C.F.R. § 36.305.  The restroom at the 709 H Street, N.W. SUBWAY is also inaccessible to patrons who

use wheelchairs and other persons with disabilities. The handle to the restroom door is a round knob, in violation of Standards § 4.13.9, which states that door opening hardware (*i.e.*, handles or latches) "shall have a shape that is easy to grasp with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate." In addition, the 709 H Street, N.W. SUBWAY location violates numerous other standards, including Standards § 4.16.2 for insufficient clear floor space to access the restroom, and Standards § 4.2.6 regarding the maximum height for placement of self-service food and drink items.

      (c)    The restroom at the 1100 New York Avenue, N.W. SUBWAY has a round door knob, thereby violating Standards § 4.13.9. There are no wheelchair accessible seats in this SUBWAY restaurant, in violation of Standards § 4.1.3(19), § 4.32, and § 5.4. The 1100 New York Avenue, N.W. SUBWAY is also in violation of other standards relating to the maximum permitted height for self-service food and drink items, the minimum required clear floor space for restroom access, and the maximum permitted height for mounting restroom mirrors.

      (d)    The restroom at the 3204 Pennsylvania Avenue, S.E. SUBWAY has a round door knob, thereby violating Standards § 4.13.9. This SUBWAY restaurant also violates other standards, including, inter alia, exceeding the maximum permitted height for mounting dispensers in restrooms, exceeding the maximum permitted height for placement of self-service drink items, and exceeding the maximum permitted height for service counters.

(e)    The path of travel through the 800 North Capitol Street, N.W. SUBWAY is only 29 inches wide, in violation of Standards § 4.3.  The food service line at this SUBWAY location is only 28 inches wide, in violation of Standards § 5.5, which requires a minimum clear width of 36 inches in food service queues, with a "preferred" clear width of 42 inches.  The 800 North Capitol, N.W. SUBWAY has other features which violate the Standards as well, including, inter alia, self-service food and drink items which exceed the maximum permitted height, insufficient clear floor space for access to and use of the restroom facilities, and mounted dispensers and mirrors in the restrooms that exceed the maximum permitted height.

(f)    The 3275 M Street, N.W. SUBWAY has a step at the entrance to the restaurant, making it inaccessible to wheelchair users, in violation of Standards § 4.3.3.  No alternative entrance or other means of access is provided, and no bell or buzzer is available to summon assistance, despite the presence of a sign at the entrance directing persons with disabilities to "just ask" for help.  The entrance door of this SUBWAY is equipped with a round door knob, and thereby violates Standards § 4.13.9.  The SUBWAY at 3275 M Street, N.W. has numerous other features which violate the Standards as well, including, inter alia, self-service drink items which are placed beyond the maximum permitted height and parallel reach distances, and service counters which exceed the maximum permitted height.

26

(g)    Prior to its apparent recent closure, the 2007 14th Street, N.W. SUBWAY visited by Mr. Starks had a step at the entrance to the restaurant, making it inaccessible to wheelchair users, in violation of Standards § 4.3. No alternative entrance was provided. The food service counter at this SUBWAY was more than 50 inches high, in violation of Standards § 7.2. The straws and lids for drinks at the 2007 14th Street, N.W. SUBWAY were set back more than 27 inches from the edge of the counter at a height of 37 inches, both in violation of Standards §§ 4.2.5, 4.2.6, and 5.6. The restrooms were also in violation of numerous standards as to clear floor space, faucet handles, sink pipe configuration, and the maximum permitted height for the placement of dispensers and the light "on-off" switch.

54.    Upon information and belief, one or more ADA and HRA violations substantially similar to those described in Paragraph 53 (a) – (g) above relating to the accessibility of restaurant entrances, serving and dining areas, and/or restrooms exist at almost all of the approximately 58 SUBWAY restaurants in Washington D.C. surveyed by the ERC. As a result, these SUBWAY restaurants violate the ADA, its implementing regulations and Standards, and the HRA.

### Plaintiff Lewis Starks and the Equal Rights Center and Its Members Have Been Injured by Defendants' Discriminatory Conduct

55.    As a proximate result of Defendants' continuing failure to design, construct, and/or maintain the entrances, sales counters, dining areas, restrooms, and parking areas at their restaurants in a manner that is readily accessible to and

usable by persons with disabilities as required by the ADA and HRA, as well as Defendants' ongoing failure to perform readily achievable barrier removal at their restaurants, Plaintiff Lewis Starks has suffered, and will continue to suffer, injury including, but not limited to, a deprivation of his right to equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of SUBWAY, as well as humiliation, embarrassment, and emotional distress.

56.     As a proximate result of Defendants' continuing failure to design, construct, and/or maintain the entrances, sales counters, dining areas, restrooms and parking areas at their restaurants in a manner that is readily accessible to and usable by persons with disabilities as required by the ADA and HRA, as well as Defendants' ongoing failure to perform readily achievable barrier removal at their restaurants, Plaintiff Equal Rights Center and its members have suffered, and will continue to suffer, injury including, but not limited to:

a.     the frustration of the purpose of the Equal Rights Center to achieve equality of access for persons with mobility impairments and the elimination of discrimination against persons with disabilities in public accommodations in Washington, D.C.;

b.     the diversion of the Equal Rights Center's resources necessary to identify and counteract Defendants' unlawful discriminatory practices in Washington, D.C.; and

c.    interference with the interests of the Equal Rights Center and

its members in protecting their rights to live in and enjoy a community that is free

from discrimination on the basis of physical disability in Washington, D.C.

### Injunctive Relief is Necessary and Appropriate to Protect The Rights of the Equal Rights Center and its Members

57.    Defendants' failure to provide accessible entrances, sales counters,

dining areas, restrooms, and parking areas, as required by the ADA and the HRA,

denies persons with disabilities the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, or accommodations of SUBWAY restaurants in

Washington, D.C.

58.    Plaintiff Starks and the Equal Rights Center have reasonable grounds

for believing that SUBWAY restaurants will continue to fail to provide accessible

entrances, sales counters, restrooms, dining areas, and parking areas, as required

by the ADA and the HRA, and that therefore Plaintiff Starks and the Equal Rights

Center and its members will be subjected to continuing discrimination in violation

of the ADA and the HRA.

59.    Plaintiff Starks and the Equal Rights Center have no plain, adequate,

or complete remedy at law.  Plaintiffs Starks and the Equal Rights Center and its

members have suffered, are suffering, and will continue to suffer irreparable injury

as a result of Defendants' continuing discriminatory conduct.

## FIRST CLAIM FOR RELIEF

## Violation of the Americans with Disabilities Act

### [Against All Defendants]

60.    Plaintiffs incorporate by reference paragraphs 1 – 59 as if fully set forth herein.

61.    At all times relevant to this action, the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq., was in full force and effect in the United States.

62.    Each SUBWAY restaurant identified in this Complaint is a "place of public accommodation" within the meaning of Section 302(a) of the ADA (codified at 42 U.S.C. § 12182(a)).  42 U.S.C. § 12181(7).

63.    Plaintiff Starks is a person with a disability within the meaning of the ADA.

64.    Plaintiff Equal Rights Center is an organization whose mission includes representing the interests of its members, many of whom are persons with disabilities within the meaning of the ADA, and eliminating discrimination against persons with disabilities.

65.    Defendants DAI, SREC, Syed Ahmed, Sharmin Ahmed, New Comilla, Inc., Obayedul Hoque, SUBWAY Sandwich, Mohamed Alam, Triple A, Faslat Elmohtaseb, Johal, and Elmohtaseb Inc. are each a "person" "who owns, leases (or leases to), or operates a place of public accommodation," within the meaning of Section 302(a) of the ADA (codified at 42 U.S.C. § 12182(a)).

66.     The ADA prohibits discrimination against persons with disabilities.

The ADA provides, in pertinent part:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

67.     On information and belief, certain SUBWAY restaurants inspected by the Equal Rights Center and identified in this Complaint are or were "design[ed] and construct[ed]" for first occupancy later than 30 months after July 26, 1990 within the meaning of the ADA, 42 U.S.C. § 12183(a)(1).  Facilities designed and constructed later than 30 months after July 26, 1990, are subject to specific accessibility criteria under the ADA.  For instance, the Act provides that for purposes of 42 U.S.C. § 12182(a), discrimination includes:

> a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with the standards set forth or incorporated by reference in regulations issued under this subchapter.

42 U.S.C. § 12183(a)(1).

68.     Defendants' failure to construct new restaurants in such a manner that complies with the Attorney General's regulation, as described above, violates the ADA and irreparably injures Plaintiffs Starks and the Equal Rights Center.

69.    On information and belief, certain SUBWAY restaurants inspected by the Equal Rights Center and identified in this Complaint are or were "altered . . . in a manner that affects or could affect the usability of the facility or part thereof" within the meaning of the ADA, 42 U.S.C. § 12183(a)(2). See 28 C.F.R. §§ 36.402 & 36.403. Altered facilities are subject to specific accessibility criteria under the ADA, including the obligation to make the altered facilities and path of travel readily accessible to persons with disabilities to the maximum extent feasible. See 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.406.

70.    Defendants' failure to make alterations to the identified restaurants in such a manner that complies with the Attorney General's regulation, as described above, violates the ADA and irreparably injures Plaintiffs Starks and the Equal Rights Center.

71.    On information and belief, certain SUBWAY restaurants identified in this Complaint are "existing" facilities within the meaning of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iv). See 28 C.F.R. § 36.304(a). Existing facilities are subject to specific accessibility criteria under the ADA. The act provides that for purposes of 42 U.S.C. § 12182(a), discrimination includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). If the elimination of the barrier is not readily achievable, the restaurants must provide an alternative method for making such goods, services, facilities, or accommodations available if such methods are readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v).

72.    Given that elimination of the architectural barriers identified above is readily achievable, or that alternative methods to making such goods and services accessible are readily achievable, Defendants' failure to remove those barriers or make them otherwise accessible violates the ADA and irreparably injures Plaintiffs Starks and the Equal Rights Center.

73.    On information and belief, certain SUBWAY restaurants identified in this Complaint have in place "policies, practices, or procedures" that impose barriers to access within the meaning of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii). Such policies and procedures are subject to specific accessibility criteria under the Act.  Public accommodations must at all times "make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . . ."  42 U.S.C. § 12182(b)(2)(A)(ii).

74.    Defendants' failure to make reasonable modifications in policies, practices, or procedures necessary to afford individuals with disabilities access to the facilities, goods, and services of their SUBWAY restaurants violates the ADA and irreparably injures Plaintiffs Starks and the Equal Rights Center.

75.    Defendants are liable for the violations of Plaintiffs' rights under the ADA because at all times relevant hereto Defendants have and do own, lease (or lease to), or operate restaurants, which are places of public accommodation as defined by the ADA.  Additionally, Defendants' employees and/or agents were acting

(a) with the consent of, (b) under the control or supervision of, and/or (c) within the authority as employees and/or agents of Defendants.

## SECOND CLAIM FOR RELIEF

## Violation of the District of Columbia Human Rights Act

## [Against All Defendants]

76.    Plaintiffs incorporate by reference paragraphs 1 – 75 as if fully set forth herein.

77.    At all times relevant to this action, the District of Columbia Human Rights Act, D.C. Code §§ 2-1401.01–2-1411.06, was in full force and effect in the District of Columbia.

78.    Each Defendant and each SUBWAY restaurant identified in this Complaint is a "place of public accommodation" within the meaning of the HRA.

79.    Plaintiff Starks is a person with disabilities within the meaning of the HRA.

80.    Plaintiff Equal Rights Center is an organization whose mission includes representing the interests of its members, many of whom are persons with disabilities, within the meaning of the HRA, and eliminating discrimination against persons with disabilities.

81.    The HRA prohibits discrimination against persons with disabilities. D.C. Code § 2-1402.31 provides, in pertinent part:

> (a) General.   It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based on the . . . disability . . . of any individual:

> (1) To deny, directly or indirectly, any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations.

82.    The HRA's prohibition of discrimination on the basis of disability applies to the same extent, and with the same effect, as Title III of the ADA.

83.    In each of the ways that Defendants violate and/or violated Title III of the ADA, Defendants also violate and/or violated the HRA.

84.    Defendants are liable for the violations of Plaintiffs' rights under the HRA because at all times relevant hereto Defendants' employees and/or agents were acting (a) with the consent of, (b) under the control or supervision of, and/or (c) within the authority as employees and/or agents of Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Starks and the Equal Rights Center respectfully pray that this Court:

a.      Declare the acts and omissions of the Defendants complained of herein to be in violation of the Americans with Disabilities Act and the District of Columbia Human Rights Act;

b.      Enter a preliminary and permanent injunction requiring the Defendants to bring all the restaurants identified in this complaint into compliance with both the ADA and the HRA.

c.      Enter judgment awarding the Plaintiffs compensatory damages in an amount appropriate to the proof at trial;

d.      Award the Plaintiffs their costs and attorneys' fees, including litigation expenses, reasonably incurred in the prosecution of this action;

e.      Award the Plaintiffs such other and further relief as the Court shall deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, by counsel and pursuant to Federal Rule of Civil Procedure 38(b), hereby demands a trial by jury on all claims so triable in this action.

DATED this 21st day of April, 2006.

_Susan M. Hoffman_

Susan M. Hoffman [D.C. Bar No. 291872]
Rebecca L. Springer [D.C. Bar No. 465982]
William Anderson [D.C. Bar No. 419340]
Crowell and Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 624-2500


Elaine Gardner [D.C. Bar No. 271262]
Washington Lawyers' Committee for
Civil Rights and Urban Affairs
11 Dupont Circle, N.W.
Suite 400
Washington, D.C.  20036
(202) 319-1000

*Attorneys for Plaintiffs*